IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTIN BRODISH,                          :
     Plaintiff                      :
                                    :
                                    :
     v.                             :          Civil No. AMD 04-3497
                                    :
FEDERAL EXPRESS CORPORATION              :
LONG TERM DISABILITY PLAN                :
and FEDERAL EXPRESS                      :
CORPORATION,                             :
     Defendants                     :
                    ...o0o...

MEMORANDUM OPINION

Plaintiff, Martin Brodish ("Brodish"), brought this action against defendants, Federal Express Corporation Long Term Disability Plan and Federal Express Corporation (hereinafter collectively referred to as "FedEx"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking reversal of FedEx's denial of long term disability benefits. Jurisdiction is exercised pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. §§ 1331, 1332.

Now pending are Brodish's motion for summary judgment and FedEx's cross-motion for summary judgment. I have carefully reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D.Md 2004). For the reasons stated below, I shall grant FedEx's motion for summary judgment and deny Brodish's motion for summary judgment.

I.     Facts

Brodish, a former ramp agent, commenced work for FedEx in 1988. In February 2001, Brodish was diagnosed with severe peripheral neuropathy[1] of bilateral feet and Charcot arthropathy,[2] a diabetes-related condition wherein the bones, especially of the feet, degenerate. Brodish's advanced form of diabetic neuropathy[3] has caused the bones in his feet to crumble, deform, and fuse. He suffers from crippling arthritis in his feet and ankles. Brodish has had five surgeries in the past three years to insert screws in his feet. Brodish contends that as a result of his impairments, he cannot sit for a total of more than three hours a day and he cannot walk or stand for a total of more than an hour a day. He must sit with his legs elevated due to the swelling and pain he experiences. The record reflects that Brodish is on medications for the pain caused by his medical condition. Brodish also takes Vistaril to alleviate the nausea caused by the pain medication.

Brodish was covered under FedEx's long term disability plan. Thus, he was entitled to a disability benefit if he became disabled as defined by the plan. The plan provides a

---

[1]"Peripheral neuropathy describes damages to the peripheral nervous system, which transmits information from the brain and spinal cord to every other part of the body.  More than 100 types of peripheral neuropathy have been identified, each with its own characteristic set of symptoms, pattern of development, and prognosis."  NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, *NINDS Peripheral Neuropathy Information Page*, *available at* www.ninds.nih.gov/disorders/peripheralneuropathy/peripheralneuropathy.htm, (last viewed July 10, 2005).

[2]Charcot's foot is a condition in which the joints and soft tissue in the foot are destroyed; it results from damage to the nerves.  THE NATIONAL INSTITUTE OF HEALTH, National Diabetes Information Clearing House, *Diabetes Dictionary*, *available at* http://diabetes.niddk.nih.gov/dm/pubs/dictionary/A-E.htm#C (last viewed July 10, 2005).

[3]Brodish, who was born in 1963, was diagnosed with diabetes at the age of 10.

monthly disability benefit equal to 60% of a covered employee's monthly income for employees qualifying under the occupational or total disability portion of the plan.[4] FedEx is the plan administrator of the long term disability plan and administers the plan through its Employee Benefits Review Committee ("BRC"). During the times relevant to this case, Kemper National Services, Inc. ("Kemper"), was the claims-paying administrator for the plan.

After Brodish was diagnosed with diabetic neuropathy in February 2001, Brodish received benefits from the FedEx short term disability plan from February 26, 2001, to August 26, 2001. Brodish then transitioned to the FedEx long term disability plan and received benefits from August 27, 2001, to August 26, 2003, under the occupational disability portion of the plan. The plan defines an occupational disability as "the inability of a Covered Employee, because of a medically-determinable physical impairment or mental impairment (other than an impairment caused by a chemical dependency), to perform the duties of his regular occupation." The plan limits occupational disability benefits to two years, after which a covered employee either ceases to receive any long term benefits for that particular impairment or continues to receive benefits under the "total disability" portion of the plan. *Plan § 3.3(c)(3).*

By letter dated February 17, 2003, Kemper notified Brodish that it was performing a periodic review of his claim for benefits and reminded Brodish of the plan's definitions of

---

[4]During the period that Brodish received disability benefits, his income was approximately $21 per hour.

occupational and total disability. Kemper requested substantiation of total disability in order to continue benefits beyond August 26, 2003. Brodish submitted additional reports by Dr. Lew Schon, his treating physician, who concluded that Brodish was totally disabled given his "superior neuropathy, Charcot, diabetes, infection, and ulcerations." Dr. Schon also concluded that Brodish could not engage in any compensable employment for 25 hours per week "due to his lower extremity numbness, deformities, stiffness, arthritis, swelling, and infections." Moreover, the report asserted, "any stresses will adversely affect the longevity of his legs, and he is at a very high risk for amputation." Dr. Schon instructed Brodish to keep all pressure off of his feet. Notably, Dr. Schon did not comment on Brodish's upper body functions in any of his medical reports.

Despite Brodish's subsequent submissions of what he avers is substantial evidence establishing his total disability, Kemper terminated Brodish's occupational disability benefits on August 26, 2003, and denied the initiation of total disability benefits, based on its determination that Brodish did not meet the plan's definition of "total disability." The plan defines total disability as the "inability, because of a medically determinable impairment . . . to engage in any compensable employment for 25 hours per week for which he is reasonably qualified or could become qualified on the basis of his ability, education, training, or experience."

Kemper denied total disability benefits based on the results of a June 24, 2003, review of Brodish's claim by Dr. Lawrence Blumberg, an orthopedic surgeon. Dr. Blumberg

evaluated Brodish's functional impairment as related to any occupation and a sedentary physical exertion level. Dr. Blumberg emphasized the absence of objective evidence, noting that there was no range of motion testing, motor strength testing, neurologic examination, x-rays, EMG/nerve conduction studies, or MRIs in Brodish's medical record. Accordingly, Dr. Blumberg concluded that "there is nothing in the records provided which would preclude the claimant from working 25 hours a week in any employment. There is no evidence that the claimant cannot sit. There is no evidence the claimant cannot lift up to ten pounds as necessary."[5]

On November 6, 2003, Brodish appealed Kemper's denial of total disability benefits; subsequently, he was advised that he could submit new information in support of his appeal. Brodish submitted 12 pages of clinical data consisting of operative notes dated September 26, 2003, and office notes from May 2003 to November 11, 2003. On November 14, 2003, Dr. Robert Ennis, an orthopedic surgeon, conducted a general peer review of all submitted documentation up to that date. Dr. Ennis reviewed Dr. Blumberg's notes, Brodish's medical records, and he evaluated functional impairment related to any occupation and a heavy physical exertion level. Dr. Ennis concluded as follows: "[I]t appears reasonable the claimant

---

[5]Brodish points out that Dr. Blumberg's review did not include any of Brodish's medical records beyond April 2, 2003. However, the record includes only one un-reviewed physician report; it was submitted by Dr. Schon on June 18, 2003, reiterating his prior findings that Brodish is not able to work full duty or work with restrictions with no discussion of Brodish's upper body capabilities in the context of a total disability analysis. Therefore, even if Dr. Blumberg had considered this report, it is unlikely it would have affected his analysis or conclusions.

is capable of working in a sedentary type job activity, with restrictions of standing, walking, climbing, bending, and stooping. There is no contraindication from a medical point of view, which is documented in the records that would preclude him from working a minimum of 25 hours per week." On December 11, 2003, FedEx affirmed Kemper's denial of benefits on the basis that Brodish did not meet the definition of total disability under the terms of the FedEx long term disability plan.

FedEx does not dispute the existence of Brodish's diabetic neuropathy and his consequent disability as it pertains to his lower extremities.  Both of FedEx's physician peer reviewers acknowledged Dr. Schon's voluminous notes pertaining to Brodish's lower body impairments caused by, *inter alia*, his diabetic neuropathy and arthritis. However, FedEx does dispute Brodish's claim that he is in constant pain even while in his wheelchair and, consequently, his insistence that he is unable to perform sedentary jobs while in a wheelchair for a minimum of 25 hours per week. FedEx emphasizes the lack of "significant objective findings" that a physical impairment exists rendering Brodish unable to sit and work in a wheelchair for 25 hours a week.[6] In short, FedEx's denial of long term disability benefits is based on its conclusion that Brodish's disability is limited to his lower body, which it concluded is insufficient to qualify as a total disability for purposes of receiving benefits under the plan.

---

[6]" [Significant] objective findings include medical examination findings, test results, x-ray results, and observation of anatomical, physiological, or psychological abnormalities. Pain, without significant objective findings, is not proof of disability." *Summary Plan Description, 120*.

II.     Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matshushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id*. at 587. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248.  "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49.  The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.

1995), *rev'd on other grounds*, 517 U.S. 308 (1996).   "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial."   Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy*, 929 F.2d at 1012. When cross-motions for summary judgment are filed, the court treats each individually, applying the same standards. *E.g., Sallie v. Tax Sale Investors, Inc.,* 998 F.Supp. 612, 614 n.1 (D.Md.1998).

III.    Standard of Review

    ERISA does not dictate the standard of review for an action brought under 29 U.S.C. § 1132(a)(1)(B) by a participant alleging he was denied benefits to which he is entitled under a covered plan. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court established two standards of review to be applied to benefits determinations by plan administrators or fiduciaries. Applying principles of trust law, the Court held that "a denial of benefits under 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. If, however, the administrator retains discretionary authority to determine benefits eligibility, then the court shall apply an abuse of discretion standard. *Id*. at 111.

The Fourth Circuit has elaborated the following approach when a court reviews an administrator's benefits decision: (1) decide *de novo* whether the plan language prescribes the benefit or confers discretion on the administrator to determine the benefit; (2) if the plan confers discretion, decide *de novo* whether the administrator acted within the scope of that discretion; and (3) if the administrator's decision is within the scope of the discretion conferred by the plan, review the merits for an abuse of discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000); *see also Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 341-42 (4th Cir. 2000) (identifying the abuse of discretion standard of review, as opposed to the arbitrary and capricious standard, as the proper standard for purposes of ERISA benefits eligibility).

Under the abuse of discretion standard, "the Trustees have not abused their discretion if their decision 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). Accordingly, an administrator's interpretation of the plan "will not be disturbed if reasonable." *Booth*, 201 F.3d at 341; *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). In determining whether a fiduciary's exercise of discretion is reasonable, the Fourth Circuit considers numerous factors, including: (1) whether the administrator's interpretation is consistent with the goals of the plan; (2) whether it might render some language in the plan documents meaningless or internally inconsistent; (3) whether the

challenged interpretation is at odds with the procedural and substantive requirements of ERISA; (4) whether the provisions at issue have been applied consistently; (5) whether the fiduciary's interpretation is contrary to the clear language of the plan; and (6) the fiduciary's motives and any conflict of interest it may have. *Booth*, 201 F.3d at 342.

If a conflict of interest exists, whereby an administrator stands to benefit or profit from its benefit eligibility determinations, the court may modify the abuse of discretion standard to reflect the conflict of interest. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999); *Firestone*, 489 U.S. at 115. The Fourth Circuit applies a sliding scale reduction of deference depending on the degree of the conflict of interest, and thus deviates from the usual abuse of discretion standard of review "only to the extent necessary to counteract any influence unduly resulting from the conflict." *Elliott*, 190 F.3d at 605 (quoting *Ellis*, 126 F.3d at 233); *Booth*, 201 F.3d at 343 n.2. Therefore, "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial evidence there must be to support it." *Elliott*, 190 F.3d at 605 (quoting *Ellis*, 126 F.3d at 233)**.**

There is no dispute here that the plan assigns FedEx's Employee Benefit Review Committee an unmistakable grant of discretion to determine benefits questions. Accordingly, this case plan triggers the abuse of discretion standard of review. The parties dispute whether there exists a conflict of interest. FedEx contends there is no conflict of

interest because benefits are paid out of the assets of a trust and not out of FedEx's operationing budget. Although FedEx makes contributions to the trust based on an actuarial formula, the benefits decisions have an immediate impact only on the trust itself. Moreover, FedEx is not in business as a plan administrator to profit from the administration of the trust funds. In response, Brodish points to the fact that FedEx makes contributions to the trust each year based on an amount "sufficient to fund . . . the benefits provided hereunder." Therefore, the smaller the amount of benefits paid out by the plan, the less money FedEx must annually contribute to the trust to fund the benefits, and the more money FedEx retains within its operating budget.

Even if I were to agree with Brodish that such circumstances constitute a cognizable conflict of interest (because FedEx's operating budget may be indirectly affected by the amount of benefits distributed by the trust), the circumstances shown here result in a mild, indeed, barely perceptible, conflict of interest in comparison to other cases where the administrator is also the insurer of the plan. *See Ellis*, 126 F.3d at 233 (finding a conflict of interest based on MetLife's role as both fiduciary of the Plan's beneficiaries and Plan insurer); *Elliott*, 190 F.3d at 605 (same). Therefore, I shall apply a lesser degree of deference, proportional to the mild conflict of interest, in my review of the administrative record. *See Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80, 87 (4th Cir. 1993) ("the fiduciary decision will be entitled to some deference, but this deference will be

lessened to the degree necessary to neutralize any untoward influence resulting from the conflict").

The parties also dispute which documents should be included in the administrative record to be reviewed by this court in deciding whether an abuse of discretion occurred. Generally, the Fourth Circuit defines the administrative record as those facts known to the administrator at the time the administrator made the benefits eligibility determination. *Stup v. Unum Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004) (citing *Sheppard & Enoch Pratt Hosp.*, 32 F.3d at 125). FedEx interprets *Stup* as limiting the administrative record to only those records before the BRC upon its December 2003 consideration of Brodish's appeal of Kemper's denial of benefits eligibility. In contrast, Brodish argues for the inclusion of medical records submitted to FedEx on April 30, 2004 (four months after the BRC affirmed Kemper's decision to deny benefits), in response to FedEx's in-house counsel's alleged affirmative request that he submit additional evidence.

The dispute over the content of the administrative record arises from the following circumstances. Brodish's attorney, Howard Bernstein, Esq., asserts by affidavit that when he telephoned FedEx's in-house counsel, Elizabeth Casteel, Esq., to discuss the BRC's denial of benefits, she instructed him to submit additional materials substantiating Brodish's total disability. Bernstein submitted certain medical records, photographs, and x-rays of Brodish's feet, medical questionnaires from Dr. Schon dated March 3, 2004, and April 19, 2004, a letter of medical necessity for a scooter from Dr. Schon dated January 9, 2003, and

a March 24, 2004, pharmacy printout of Brodish's medications. Bernstein made numerous follow-up phone calls to Casteel to discuss the records and their impact on his client's case. He did not receive a response until some time after June 7, 2004. Ultimately, Casteel informed Bernstein that Brodish would have to file a lawsuit.

Casteel denies ever requesting additional medical records that would be added to the administrative record; indeed, she asserts by affidavit that for her to have done so would have violated the plan's provisions. *See Plan §§ 5.3(d), 7.1*. Rather, she affirms, she advised Bernstein that if he believed an error or mistake had occurred in the denial of Brodish's claim, Bernstein should send her documentation evidencing such error or mistake. If an error or mistake in the appeal process was discovered, then the BRC would re-open the appeal process.

The parties' disagreement as to the substance of the communication that took place between Bernstein and Casteel in April 2004 is not a dispute of a material fact. That is, whether Casteel requested additional substantive medical evidence is not material because it does not resolve the question of what constitutes the administrative record before this court given Brodish's request for reconsideration of his benefits eligibility on April 30, 2004. Recalling the Fourth Circuit's findings in *Stup* and *Sheppard & Enoch Pratt* that the administrative record includes those facts known to the administrator at the time of the benefits eligibility determination, the determinative question in this case is what constitutes the "determination" or "decision:" (1) the BRC's denial of benefits, on the one hand, or (2)

the BRC's refusal to reconsider the case prior to the filing of this lawsuit, notwithstanding the submission of additional information. The Fourth Circuit has yet to directly address this issue in a case involving a formal or informal request for reconsideration by the beneficiary, as is pertinent in the facts of this case. *But see Sheppard & Enoch Pratt*, 32 F.3d at 125 ("Thus, although it may be appropriate for a court conducting *de novo* review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review . . . under the abuse of discretion standard.").

The Fifth Circuit has defined the scope of the administrative record to include additional evidence submitted by a claimant's lawyer prior to filing the lawsuit so long as it was submitted "to the administrator in a manner that gives the administrator a fair opportunity to consider it. . . . If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record." *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc) (citations omitted); *Bratton v. National Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 n.5 (5th Cir. 2000).

In *Vega*, the plan beneficiaries were denied health benefits by the insurer two months after they were approved for coverage. *Vega*, 188 F.3d at 289-90. The benefits were rescinded based on allegations of a pre-existing condition that was not disclosed in the original application for health insurance. *Id*. at 290. The beneficiaries did not submit a

request for review of the decision, but instead hired a lawyer and filed suit. *Id*. Upon the filing of motions for summary judgment, the beneficiaries' exhibits included affidavits by their doctors corroborating the beneficiaries' lack of knowledge as to any pre-existing conditions at the time they applied for the health insurance. *Id*. at 299-300. The district court declined to consider the additional evidence for the purpose of resolving the dispute on the merits of the claim. *Id*. at 300. The Fifth Circuit sustained the district court's ruling because the beneficiaries could have easily presented the excluded evidence to the administrator prior to filing suit. *Id*. Had the claimant's lawyer submitted the additional evidence to the administrator (i.e., the health insurance company) in a manner that provided the administrator with a fair opportunity to consider it, the district court would have been within its discretion to consider the evidence. *Id*. Thus, there is not a "particularly high bar to a party's seeking to introduce evidence into the administrative record." *Id*.

In the instant case, Bernstein submitted the additional medical records six months prior to filing suit in this court, which was ample time for FedEx to review the evidence; plainly, defendants were not caught by surprise with new evidence in the midst of a lawsuit. The Fifth Circuit's reasoning is sound: "[i]f the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record." *Bratton*, 215 F.3d at 521 n.5 (citing *Vega*, 188 F.3d at 300). Such reasoning encourages attorneys for claimants to make a good faith effort to resolve the claim with the administrator prior to filing suit in

district court and affords a safeguard against possible abuse or mistake by the administrator. *See Vega*, 188 F.3d at 300; *Bratton*, 215 F.3d at 521 n.5. Therefore, I find the relevant "determination" by FedEx regarding Brodish's claim for total disability benefits to include its refusal to reconsider his case in June 2004 subsequent to the BRC's December 2003 affirmance of Kemper's denial of benefits. Accordingly, the evidence before FedEx at the time of the "determination" included the records sent by Brodish's attorney on April 30, 2004, and thus those records are to be treated as included in the administrative record before me. (FedEx's cross motion for summary judgment addresses the merits of the medical reports submitted in April 2004 in its argument for upholding the denial of benefits eligibility.)

Notwithstanding my finding as to the scope of the administrative record, the additional evidence submitted in April 2004 would not alter my ruling, as articulated below, that FedEx did not abuse its discretion in denying Brodish total disability benefits.[7]

---

[7]In *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1017-27 (4th Cir. 1993), the Fourth Circuit addressed the issue of determining the scope of the evidentiary record to be reviewed by the district court upon conducting a *de novo* review of ERISA benefits claims. The Fourth Circuit concluded that district courts should review "only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim." *Id.* at 1026-27. The Court provided a non-exhaustive list of exceptional circumstances warranting an exercise of the court's discretion to allow additional evidence. *Id.* at 1027 (claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity; additional evidence that could not have been presented in the administrative process). *Quesinberry* explicitly addresses *de novo* review, as opposed to the narrower abuse of discretion review

(continued...)

IV.    Analysis

It is well established that in the plan before this court as in all or most plans, the

burden of proving total disability is on the employee. *See Elliott*, 190 F.3d at 603. Of

course, the administrator may opt to gather additional evidence by conducting independent

medical examinations or peer reviews, but it is not required to do so. *See Stup*, 390 F.3d at

304-05 (hiring independent physicians to examine the employee and incorporating the

results of the examination in assessing benefits eligibility); *Elliott*, 190 F.3d at 604 (same);

*Booth*, 201 F.3d at 339 (same); *Laser v. Provident Life and Ins. Co.*, 211 F.Supp.2d 645,

650 (D.Md. 2002) ("Although independent reviews of medical evidence and independent

examination of claimants are not required, both are common in ERISA cases.").

In this case, Kemper and FedEx enlisted the services of Dr. Lawrence Blumberg and

Dr. Robert Ennis, orthopedic surgeons, on June 24, 2003, and November 14, 2003,

respectively, to conduct general peer reviews of Brodish's medical records.[8] Drs. Blumberg

and Ennis reviewed and evaluated the treating physician reports of Dr. Schon, after which

they both separately concluded that Brodish was not totally disabled, as there was

insufficient evidence supporting Brodish's alleged inability to use his upper body to

perform sedentary work at least 25 hours a week. The reviewers reached this conclusion

---

[7](...continued)
relevant to the case *sub judice*.

[8]Dr. Blumberg and Dr. Ennis were not employees of Kemper or FedEx; their
independence has not been put at issue.  This fact has been determinative in similar cases with
regard to the court's assessment of a conflict of interest.  *See Laser v. Provident Life & Accident
Ins. Co.*, 211 F.Supp.2d 645, 650 (D.Md. 2002).

despite Dr. Schon's conclusion that Brodish was totally disabled. Drs. Blumberg and Ennis discounted Dr. Schon's conclusion because they did not find significant objective findings supporting the existence of total disability as defined by the plan. Therefore, the decision makers at Kemper and FedEx were faced with conflicting medical opinions as between Dr. Schon, on the one hand, and Drs. Blumberg and Ennis, on the other hand, regarding the extent of Brodish's impairment and its impact on his ability to work part time at a sedentary job.

Although Kemper and FedEx cannot arbitrarily ignore the opinions of Brodish's treating physician, they reasonably may choose to credit the opinions of Drs. Blumberg and Ennis over Dr. Schon's. *Briggs v. Marriott Int'l, Inc.*, 2005 WL 1072710, *8 (D.Md. May 6, 2005) (citing *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (holding that ERISA does not require plan administrators to give special deference to treating physicians' opinions, although they may not arbitrarily refuse to credit them)). Moreover, it is not an abuse of discretion for a plan fiduciary to deny benefits where conflicting medical reports are presented. *Elliott*, 190 F.3d at 606 (citing *Ellis*, 126 F.3d at 126; *Brogan*, 105 F.3d at 162-63). Although the peer review doctors did not physically examine Brodish, they thoroughly reviewed Dr. Schon's notes and Brodish's medical records in their search for evidence that Brodish was disabled *in his upper body*. The medical records reviewed by Drs. Blumberg and Ennis repeatedly discussed the impact of the neuropathy and Charcot arthropathy on his feet, ankles, and legs, with no mention of the

impact of these conditions on his upper body.  The peer review physicians could find no such evidence apart from Dr. Schon's conclusory statements that Brodish was totally disabled, and thus defendants could reasonably conclude, by relying on their analyses, that Brodish could work while in a wheelchair for the minimum 25 hours a week. Despite Brodish's unfortunate and debilitating diabetes-related medical conditions, Brodish simply failed to provide sufficient evidence directly addressing the impact of his medical condition on his upper body. This is true notwithstanding the contention that pain alone is sufficient to sustain a claim for total disability.

Indeed, the statements of another of Brodish's physicians, Dr. Levine, indicate a level of functional capacity of Brodish's upper body. Dr. Levine treated Brodish for a shoulder injury in August 2003. He released Brodish to return to work for 25 hours a week four to six weeks later. Although Dr. Levine did not treat Brodish for the medical conditions on the basis of which Brodish is requesting total disability benefits (i.e., the peripheral neuropathy and Charcot arthropathy), his opinion is relevant to Dr. Ennis's assessment that Brodish's upper body is not totally disabled so as to prevent him from working the minimum hours prescribed by the plan.  *See Summary Plan Description, 120* ("Pain, without significant objective findings, is not proof of disability.").

These findings, combined with the  absence of objective evidence to the contrary, make it  reasonable for Kemper and Fed Ex to rely upon the opinions of Drs. Blumberg and Ennis in denying benefits. *See Briggs*, 2005 WL 1072710 at *7; *see also Booth*, 201 F.3d

at 344 (noting that the court should not disturb the administrator's decision if it is reasonable, even if the court independently could have come to a different conclusion). The record here discloses that after Kemper's denial of benefits to Brodish and prior to FedEx's consideration of his appeal, Brodish was provided with an opportunity to marshal substantial evidence, including, for example, a medical and vocational assessment of his upper body capabilities while sitting in a wheelchair, but he failed to do so. Therefore, it was not an abuse of discretion for Kemper or FedEx to conclude that Brodish was not totally disabled in accordance with the plan's definition of the term.[9]

The above analysis addresses the evidence submitted prior to Kemper's initial denial and FedEx's affirmance of the denial. In light of my finding regarding the scope of the administrative record, I shall now explain why the inclusion of the additional evidence submitted on April 30, 2004, also fails to establish an abuse of discretion on the part of the plan administrator.

Brodish's allegations of an abuse of discretion emphasizes information found in the additional evidence submitted. For example, Brodish relies heavily on Dr. Schon's responses to questionnaires assembled by Brodish's counsel and dated March 3, 2004, and

---

[9]Brodish requests that I consider the Social Security Administration's (SSA) determination that Brodish is totally disabled as further evidence of Brodish's total disability. *Kirwan v. Marriott*, 10 F.3d 784, 790 n.32 (11th Cir. 1994) ("A district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits) (citations omitted). After reviewing the administrative record that clearly supports FedEx's contention that it acted reasonably, I decline to weigh the SSA decision more favorably than other evidence. *See Elliott*, 90 F.3d at 607 (holding that Social Security determinations are not binding, particularly when disability standards are not analogous).

April 19, 2004. The April 19, 2004, report adds nothing to my previous analysis, as it merely repeats Dr. Schon's conclusory statements that Brodish is totally disabled due to diabetic neuropathy severely affecting his lower body.  Again, these medical opinions do not explicitly or directly rebut FedEx's finding that Brodish can utilize his upper body in a sedentary job for 25 hours a week.

As for the lengthier March 3, 2004, questionnaire, I find that in fact it undermines Brodish's claim of total disability. Dr. Schon notes that Brodish can reach in all directions and engage in gross manipulation in the form of using a hammer or installing a lightbulb "occasionally." *Pl.'s Exh. 6 at 6*.  Brodish can also finger/pinch objects such as picking up a coin from a table top or a single sheet of paper from a pile of paper "frequently." *Id*.[10] Moreover, Brodish is able to use his hands without interruption due to pain up to 2/3 of an eight hour workday.  *Id*. at 7. Therefore, the record supports the view that Brodish has the upper body motor skills needed to work at a sedentary job. Dr. Schon also concluded that the side effects of the pain medication necessitates periods of rest during daytime hours totaling an average of 1-2 hours to occur in periods of ½ hours. *Id*. A part time employee working an average of five hours a day could reasonably perform his duties and take the appropriate breaks during and after his shift and still manage the side effects of the pain medication.

---

[10]"Occasionally" is defined as lifting and carrying up to 1/3 of an eight hour workday (cumulative, not continuous).  "Frequently" is defined as lifting and carrying 1/3 to 2/3 of an eight hour workday (cumulative, not continuous).  *Pl.'s Exh. 6 at 5*.

Although Brodish's diabetes-related medical conditions result in his undisputed lower body disability and indirectly affect his upper body capabilities, it was reasonable for peer review physicians to conclude that these physical limitations do not preclude him from working in a wheelchair with his feet elevated for at least 25 hours a week. Consequently, I conclude that FedEx's denial of total disability benefits to Brodish was based on a deliberate, principled reasoning process that was supported by substantial evidence and in accordance with law.

V.      Conclusion

For the reasons stated above, plaintiff's motion for summary judgement shall be denied and defendant's cross-motion for summary judgment shall be granted.


Filed: August 10, 2005                                    __/s/_____
                                                          Andre M. Davis
                                                          United States District Judge